AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No. 18- 142m
)
NEW CASTLE, DELAWARE 19720 )                        **REDACTED**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of ___Delaware___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a), (b)(1)(C), | Delivery of a Controlled Substance |

**FILED**

**AUG 2 2018**

**U.S. DISTRICT COURT DISTRICT OF DELAWARE**

The application is based on these facts:
See attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

James H. Reisch, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/02/2018

_____
*Judge's signature*

City and state: Wilmington, Delaware     Mary Pat Thynge, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE SEARCH
OF THE PREMISES KNOWN AS:

Case No. 18-142m

NEW CASTLE, DELAWARE 19720

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR
### A WARRANT TO SEARCH AND SEIZE

I, James H. Reisch, being duly sworn, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since May of 2015. I am currently assigned to the Wilmington, Delaware Field Office within the Baltimore Field Division. I am a graduate of the Federal Law Enforcement Training Center's Basic Criminal Investigator Program and the ATF's Special Agent Basic Training Program. Prior to your Affiant's employment with ATF, your Affiant was a sworn law enforcement officer with the Virginia Department of State Police for ten (10) years. Your affiant spent four (4) years assigned to the Bureau of Criminal Investigation, General Investigation Section, and Violent Crime Unit. This current assignment, as well as your Affiant's previous six (6) years as a uniformed Virginia State Police Trooper afforded your Affiant the opportunity to investigate and/or arrest and prosecute hundreds of individuals, for violent crimes, white collar crimes, cyber crimes, threats of death or bodily harm against persons and numerous other criminal offenses in violation of the Code of Virginia and the United States Code.

1

During that time, your Affiant attended schools on homicide, child abduction, child death investigation, serial killers, criminal profiling, statement analysis, interview and interrogation, hostage negotiation and crime scene forensics. Your affiant attended these schools through courses offered by The Virginia State Police, The Virginia Department of Forensic Science, The Virginia Department of Corrections, The Federal Bureau of Investigation, The Delaware State Police Homicide Unit and The International Association of Homicide Investigators; of which your Affiant is a member. Your Affiant has testified in United States District Court and multiple jurisdictions across the Commonwealth of Virginia involving the aforementioned violations of law. Your Affiant has participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving violations of the criminal code of Virginia, as well as United States Code.

2. Your Affiant is a forensic crime scene technician and a graduate of the 85th Session of the Virginia Department of Forensic Science Academy, a Crisis Negotiator and Police Shooting Investigator.

3. This affidavit is in support of a search warrant for the premises known as 27 SOUTH STREET, NEW CASTLE, DELAWARE ("SUBJECT RESIDENCE"), where there is probable cause to believe there is concealed heroin/cocaine, and other items pertaining to the possession and distribution of heroin/cocaine, records of heroin/cocaine transactions, names and phone numbers of sources of heroin/cocaine and purchasers of heroin/cocaine, firearms, ammunition, paraphernalia used in the possession of firearms including gun cases, ammunition magazines, holsters, spare parts for

firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, receipts for the purchase and/or repair of these items, records related to the possession and/or sale of firearms, and indicia of residency.

4. I am the case agent responsible for the investigation in aid of which this application is being made. This affidavit is based on my personal knowledge and observations as well as information provided to me by other law enforcement officers. Because the affidavit is solely for the purpose of establishing probable cause, not all facts relating to the investigation are included herein.

5. This investigation relates to the illegal sale and possession firearms; heroin and cocaine trafficking activities of Carl Decorsey ROY (ROY).

## FACTS ESTABLISHING PROBABLE CAUSE

A. **Arrest of ROY on July 19, 2018**

6. On July 19, 2018, ROY was scheduled to sell 15 ounces of crack cocaine and 20 logs of heroin to two (2) ATF Confidential Informants (hereinafter "CIs"). Prior to the transaction, aerial surveillance captured ROY pull into the driveway of 25 South Street and exit his vehicle with nothing in his hands. ROY walked out to the street and into the driveway of the SUBJECT RESIDENCE before disappearing into the residence. Several minutes later, ROY was seen in the driveway of the SUBJECT RESIDENCE. ROY walked at a fast pace, up the driveway of the SUBJECT RESIDENCE around the fence line and back into the driveway of            . ROY was observed with a black object in his hand before he entered the driver side of his vehicle.

7. This information was also corroborated with an active GPS unit that was

3

affixed to ROY's vehicle.

8.  ROY left the area. Constant recorded aerial surveillance[1] was maintained on ROY. At one point, ROY stopped at a tow yard/mechanic shop at 601 A. Street, in Wilmington, Delware. This address is where ROY told the CIs to go to meet him in order to complete the deal. There, ROY parked between a school bus and a box truck, got out of the driver's seat, and crawled under the rear axle of the box truck. ROY emerged from the other side of the box truck with a black bag in one of his hands. ROY then walked along the fence line to a minivan, and placed the bag under the front driver's seat of the minivan. ROY then walked into a nearby building and called the CIs. Soon thereafter, he became worried that law enforcement might be present.

9.  ROY then went back to the minivan and retrieved the same black bag from the driver's seat, picked up a piece of trash and used it to cover what is in his hand. ROY walked to a Hyundai Sonata and left the area. Aerial surveillance followed ROY the entire time. Eventually ROY stopped at a residence just south of A Street on Townsend Street. ROY walked with the black bag to a disabled green vehicle and put the bag under the front hood. ROY then went inside another nearby residence,

, for a short period of time (less than 10 minutes). Upon leaving Roy got into a large white passenger van which drove back to the disabled green vehicle. ROY exited the white passenger van, retrieved the black bag from the hood of the disabled green vehicle, got back into the large white passenger van, and traveled to Delaware Park Racetrack and Casino. There, Roy was arrested. In the rear portion of

---

[1] Your affiant viewed these records as recently as the date of this affidavit.

the white van, directly under the seat where ROY was sitting, officers located one large black plastic grocery bag. Inside were 20 logs of heroin wrapped in white paper and a smaller black grocery bag. That smaller black grocery bag contained three clear plastic bags holding approximately 5 ounces of crack cocaine, each, totaling 15 ounces of crack cocaine.

10. Based on these movements, your affiant believes that ROY obtained the either crack cocaine or heroin from the SUBJECT RESIDENCE. He then retrieved remaining substance (again, either crack ccoine or heroin), from underneath the box truck at the tow yard.

11. On ROY's person at the time of his arrest was a set of keys.

**B. Contact by ROY's Vehicle in the Area of the SUBJECT RESIDENCE on July 18, 2018.**

12. In the days before ROY's arrest, the CIs were in discussions with ROY to purchase 15 ounces of crack cocaine. The GPS tracker affixed to ROY's vehicle showed that on July 18, 2018, at approximately 7:30 p.m., ROY's vehicle stopped within 50 yards of the SUBJECT RESIDENCE for approximately (5) minutes. At approximately 8:30 p.m., July 18, 2018, your affiant received notification from one of the CIs that he/she had spoken to ROY, and the deal was set for the next day. ROY directed the CIs to bring extra money for an additional 20 logs of heroin.

13. This sequence of events further supports your affiant's belief that ROY used the SUBJECT RESIDENCE as a stash house. Your affiant believes that on July 18, ROY obtained either the crack cocaine or heroin in advance of

the July 19 deal and stashed it at the SUBJECT RESIDENCE until he could retrieve it the next morning.

C. **Contact by Roy's vehicle in the Area of the SUBJECT RESIDENCE prior to a Transaction on June 21, 2018.**

14. On June 21, 2018, your affiant set out to complete a controlled purchase of eleven (11) logs or 10.01 grams of heroin from ROY using two (2) confidential informants ("CIs"). The purchase was coordinated via text message prior to June 21, 2018, with the CIs originally requesting twenty (20) logs for purchase. ROY indicated that he only had eleven (11) available for sale, and that the price was $1,540.

15. Prior to his arrival at the meeting location Agents witnessed ROY proceed down _____, New Castle, Delaware 19720. _____ t is one of a series of loops off of Route 9—when one enters off _____ one must loop back around and return back to Route 9 off of Center Street or North Street. The SUBJECT RESIDENCE is located within this area. Agents did not follow ROY down _____ because they feared being discovered. They noted, however, that ROY did not immediately drive through the neighborhood back onto ROUTE 9. He stopped for approximately five (5) minutes. This is consistent with ROY's aforementioned contacts with the SUBJECT RESIDENCE.

16. On June 21, 2018, ROY arrived in his registered vehicle[2] parked, and at approximately 2:39 p.m., ROY entered the rear passenger seat of the CIs' vehicle with a black grocery bag in his hand. At approximately 14:39:41 hours, the CIs purchased

---

[2] A 2013 White Nissan Maxima registered in Roy's name.

6

of the aforementioned eleven (11) logs of heroin from ROY. During this controlled purchase, ROY intimated that he had two (2) firearms for sale for $800. ROY agreed to meet the CIs in one hour in the rear parking lot the Delaware Park Racetrack and Casino to complete the sale of two (2) firearms.[3]

17. Following the exchange of $1,540 in United States Currency (USC), ROY exited the CI's vehicle, entered his vehicle and left the area.

18. The black grocery bag contained 1,430 small Ziploc baggies containing blue glassine envelopes with an off-white powder inside.[4] Each of these 1,430 small Ziploc baggies was rubber banded in thirteen (13) bag "bundles" and every ten (10) "bundles" formed a "log." Your affiant knows through both training and experience that this is how heroin is typically packaged and sold in the District of Delaware.

19. The parties then met again at approximately 15:56:12 hours, ROY entered the rear passenger seat of the CIs' vehicle after arriving in his vehicle.[5] At 15:56:30 hours, ROY produced two (2) blue Nike tube socks from his pants. These socks contained a Titan FIE, .25 caliber pistol bearing serial number 196872, loaded

---

[3] This entire interaction was recorded on video, and your affiant has viewed this video.

[4] In light of the significant health risks to law enforcement handling substances potentially containing fentanyl, the Drug Enforcement Administration has issued a caution to law enforcement officers against field testing these substances and advises that they be sent directly to the controlled substance testing laboratory. The State of Delaware has adopted this advisory and all police departments no longer conduct presumptive testing.

[5] This entire interaction was recorded on video, and your affiant has viewed this video.

with six (6) .25 caliber cartridges and a Kel-Tec P32, .32 caliber pistol bearing serial number DOL94, loaded with seven (7) .32 caliber cartridges.

20. The CIs gave ROY $800 in exchange for the two guns. ROY then exited the CI's vehicle, entered his vehicle and left the area.

**D. Follow-up Investigation into the SUBJECT RESIDENCE**

21. On August 2, 2018, Agents went to the SUBJECT RESIDENCE. Agents knocked and announced their presence but were met with no answer. The Agents observed that the exterior of the dwelling was dilapidated and portions of the roof were beginning to cave in. There was trash and empty liquor and beer bottles strewn about the yard and driveway. Upon approach of the porch, a partially destroyed screen door was observed covering the residence's main door. Once the screen door was opened, Agents witnessed a partially broken front door that was secured with a freshly installed deadbolt. The deadbolt was the only locking mechanism securing the residence. The other two doors to the residence were checked and found to be locked or barricaded from the inside.

22. Your affiant tried the keys from ROY's key ring on the deadbolt. One of these keys unlocked the deadbolt.

23. Agents believed the home to be vacant. There was no evidence that the residence was currently occupied. Agents posted Wilmington Police Departments units at the residence pending the application of this search warrant.

24. Your affiant further notes that throughout this months long investigation into ROY, he never worked with other people to conduct his street level transactions.

Thus, although ROY has at least one currently unknown supplier, it is unlikely that anyone entered the SUBJECT RESIDENCE to remove evidence.

25. Further supporting the notion that evidence has not disturbed, is the fact that it does not appear that anyone lives inside the residence. Furthermore, all entrances to the SUBJECT RESIDENCE appear secure, meaning that it does not seem as though anyone has broken into the residence.

26. Your Affiant also knows from training and experience that individuals who distribute drugs commonly possess drugs, scales to weigh drugs for distribution, drug packaging materials, records of illegal drug transactions, names and phone numbers of sources of drug supply and purchasers of drugs, owe sheets for the illegal distribution of drugs, and proceeds from the sale of narcotics. Your Affiant also knows that drug traffickers commonly possess firearms to protect their supply of drugs and money.

27. Your Affiant knows from training and experience that persons who maintain firearms in their possession, as well as those who sell/trade firearms, often maintain additional ammunition, paper records related to the purchase and sale of firearms, ammunition, cleaning supplies, and weapons accessories. Your Affiant knows from training and experience that such people commonly store these items in safe places, places where they need ready access to the items, and where they conduct their drug transactions—such as their residences and their vehicles. Furthermore, your Affiant knows from training and experience that such persons often store these drugs and firearms in their vehicles to avoid detection by law enforcement.

28. Your Affiant further knows from training and experience that drug and

firearms traffickers store names, telephone numbers, and contact information for individuals within their distribution network on their cellular telephones, including, but not limited to, the identities of the heads of the narcotics and firearms trafficking organization, the identities of the individuals who obtain the firearms and narcotics, the identities of the individuals who store the firearms and narcotics, the identities of the individuals who transport the firearms and narcotics, the identities of the individuals who distribute the firearms and narcotics, and the identities of the individuals who are responsible for the proceeds of the firearms and narcotics.

29. Your Affiant also knows from training and experiences that firearm and drug traffickers commonly communicate on their cellular telephones in furtherance of their trafficking activity. This communication includes, but is not limited to, having real time conversations regarding firearms and drug trafficking, utilizing voice mail messaging, picturing messaging, the "push to talk" feature and/or other special features available to cellular telephone users.

30. Based on your Affiant's training and experience, and your Affiant's participation in this investigation, your Affiant believes that there is probable cause to believe that ROY violated Title 21 U.S.C. Section 841(a)(1), Possession with Intent to Distribute a Controlled Substance and 18 U.S.C. Section 922(g)(1), Felon in Possession of a Firearm, and that heroin/cocaine and other items pertaining to the possession of heroin/cocaine, records of illegal transactions of heroin/cocaine, names and phone numbers of sources of heroin/cocaine and purchasers of heroin/cocaine, firearms, ammunition, paraphernalia used in the possession of firearms including gun cases,

ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, receipts for the purchase and/or repair of these items, records in relation to the possession of firearms, cellular telephones, and indicia of residency/ownership, are located at the SUBJECT RESIDENCE, and respectfully requests that the Court issue a Search Warrant to search for, and seize those items in that residence and within that vehicle.

_____
James Reisch
Special Agent, ATF

Sworn to and subscribed in my presence
this 2nd day of August 2018.

_____
Honorable Mary Pat Thynge
United States Magistrate Judge

## ATTACHMENT A

### *ITEMS TO BE SEIZED*

Any and all materials, items, or data that constitute fruits, evidence, and/or instrumentalities of violations of Title 18, United States Code Section 922(g) and Title 21, United States Code Section 841(a), including but not limited to:

1. Illegal drugs and other items pertaining to the possession of illegal drugs, records of illegal drug transactions, names and phone numbers of sources of illegal drugs and purchasers of illegal drugs;
2. firearms, ammunition, paraphernalia used in the possession of firearms including gun cases, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, receipts for the purchase and/or repair of these items,
3. records in relation to the possession of firearms;
4. cellular telephones;
5. United States currency in excess of $1,000;
6. and indicia of residency.

## ATTACHMENT B

*PLACE TO BE SEARCHED*

, NEW CASTLE, DELAWARE



, NEW CASTLE, DELAWARE is a one-story, single-family home with brown wood siding surrounded by a chain link fence. There is an enclosed front porch with access from the left side. There is a partially broken screen door and a white front door. The numbers are displayed/affixed to the house, above the front door in black and white numbers and also on the front left post of the front porch in brown numbers facing toward

13